IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTONIO NATHANIEL CHANDLER,  :
     Plaintiff,  :
      :
v.  :  CIVIL ACTION NO. 25-CV-6840
      :
OFFICER VOROS, *et al.*,  :
     Defendants.  :

## MEMORANDUM

**COSTELLO, J.**                                                    **MARCH  6, 2026**

Plaintiff Antonio Nathaniel Chandler filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the Upper Darby Township ("Upper Darby"), Upper Darby Township Police Department ("Upper Darby PD"), Upper Darby PD Officer Voros, and Marshall Road Auto Repair, Inc. ("Marshall Road Auto").  Chandler also seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Chandler leave to proceed *in forma pauperis* and dismiss the Complaint. [1]

---

[1] Chandler's Complaint ("Compl.") consists of six typewritten pages.  (ECF No. 2.)  The Court considers the entire submission to constitute the Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system.  The factual allegations set forth in this Memorandum are taken from Complaint.  Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up.  The Court may consider matters of public record when conducting a screening under § 1915.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  The Court may also take judicial notice of prior court proceedings.  *See In re Ellerbe*, No. 21-3003, 2022 WL 444261, at *1 (3d Cir. Feb. 14, 2022) (*per curiam*) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3) (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings)

## I.    FACTUAL ALLEGATIONS

Chandler alleges that his constitutional rights were violated when he was pulled over by Officer Voros on November 9, 2025, in Upper Darby with his minor son in the vehicle.  (Compl. at 1-2.)  He claims he did not commit a "traffic violation, nor was there an emergency."  (*Id*. at 2.)  He contends Voros approached the passenger side window and "stated the stop was for an allegedly invalid registration plate and illegal tint." (*Id*.)  Chandler informed Voros "that the decorative auto tag was not a state issued registration plate nor does it resemble or impersonate one." (*Id*.)  During the traffic stop, Voros "demanded" Chandler's identification, and he provided Voros with his valid U.S. Passport.  (*Id*.)  Voros "initially stated he would run [Chandler's] name, issue citations, and release" them, but then demanded that Chandler exit the vehicle.  (*Id*.)  He refused to exit the vehicle "due to no justifiable cause given" and requested a police supervisor, but Voros "denied the request, violating department policy and [his] rights." (*Id*.)  Chandler asserts Voros then "escalated the encounter," and "became physically aggressive," threatening to arrest him, and take custody of his son.  (*Id*. at 2-3.)  At some point during the stop, he claims Voros opened one of the vehicle's doors without consent and "placed his hand on his firearm while [Chandler] reached for his passport." (*Id*. at 3.)  "Fearing for their safety," Chandler and his son exited the vehicle and stood on the side of the road.  (*Id*.)  He alleges Voros searched the vehicle "without consent or probable cause and ordered it impounded." (*Id*.)  He claims Marshall Road Auto, presumably where the vehicle was taken, "provided no itemized receipt" in violation of state law and demanded $285 to release the vehicle to him on November 10, 2025.  (*Id*.)  Chandler contends he was not arrested and claims no "citation or written report was issued on the evening on November 9, 2025." (*Id*.)

A review of the publicly available Pennsylvania state court dockets reveal that Chandler was charged on November 14, 2025, with four traffic violations by Voros that occurred on November 9, 2025, in Upper Darby, including improper sunscreening/window tint, operating a motor vehicle without proper insurance, driving an unregistered vehicle, and driving while operating privileges are suspended or revoked.  *See Commonwealth v. Chandler*, MJ-32133-TR-0006380-2025 (M.J. Delaware) (citing improper sunscreening, 75 Pa. Cons. Stat. § 4524); *Commonwealth v. Chandler*, MJ-32133-TR-0006379-2025 (M.J. Delaware) (citing operating a motor vehicle without required financial responsibility, 75 Pa. Cons. Stat. § 1786(f)); *Commonwealth v. Chandler*, MJ-32133-TR-0006378-2025 (M.J. Delaware) (citing driving an unregistered vehicle, 72 Pa. Cons. Stat. § 1301(a)); *Commonwealth v. Chandler*, MJ-32133-TR-0006377-2025 (M.J. Delaware) (citing driving while operating privilege is suspended or revoked, 75 Pa. Cons. Stat. § 1543).  These violations remain pending.

As a result of these events, Chandler contends that he and his son suffered emotional distress, loss of access to their vehicle, and fear for their life and safety.  (Compl. at 5.)  Chandler brings claims on behalf of himself and his son for excessive force and unlawful search and seizure, due process claims under the Fourteenth Amendment, a claim against Upper Darby under *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), and for violations of state law. (*Id*. at 4-5.)  He seeks money damages, a declaration that his rights were violated,[2] and injunctive relief.  (*Id*. at 5-6.)

---

[2] Declaratory relief is unavailable to adjudicate past conduct, so Chandler's request for this type of relief is dismissed.  *See Corliss v. O' Brien*, 200 F. App' x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct"  and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App' x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is

3

## II.    STANDARD OF REVIEW

The Court grants Chandler leave to proceed *in forma pauperis* because it appears that he

is incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C.

§ 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same

standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to

determine whether the complaint contains "sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage

of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all

reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts

sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir.

2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d

Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

As Chandler is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v.*

*Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239,

244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the

complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts

in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented

---

liable to another."  *Corliss*, 200 F. App' x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it by name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").

## III.    DISCUSSION

Chandler alleges his constitutional claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    Claims Brought on Behalf of Others

As a non-attorney proceeding *pro se*, Chandler may not represent his son or raise claims on his son's behalf. Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts. Section 1654 thus ensures that a person may

conduct his or her own case *pro se* or retain counsel to do so.  *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990))).  Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court.  *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *see also Osei-Afriyie*, 937 F.2d at 882 ("We hold that Osei-Afriyie, a non-lawyer appearing *pro se*, was not entitled to play the role of attorney for his children in federal court.").

Moreover, Chandler lacks standing to bring claims on behalf of his minor child.  "[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim.  *See Township of Lyndhurst v. Priceline.com, Inc*., 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted)).  Courts have found specifically that parents lack standing to bring claims for their minor children.  *See Chang v. Dept. of Servs. for Child., Youth, & their Fams., Div. of Fam. Servs.*, 790 F. App'x 435, 437-38 (3d Cir. 2019) (*per curiam*) (finding father lacked standing to address children's claims on appeal); *see also Jackson v. Bolandi*, No. 18-17484, 2020 WL 255974, at *5 (D.N.J. Jan. 17, 2020) ("Here, *pro se* Plaintiff does not have standing to assert any claims on behalf of her daughter.").  Accordingly, the Court will dismiss without prejudice any claims brought on behalf of Chandler's son due to his *pro se* status and for lack of standing.

### B.    Claims Against Upper Darby PD

Following the decision in *Monell*, courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id.*; *see also, e.g., Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability" (citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir.1988))); *Hadesty v. Rush Twp. Police Dept*, No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016). Therefore, Upper Darby PD is not a proper defendant in this case under Section 1983 and will be dismissed.

### C.    Fourth Amendment Claims

#### 1.    Claims Related to the Traffic Stop and Vehicle Search and Seizure

Chandler alleges Fourth Amendment violations related to the traffic stop and subsequent search and seizure of his vehicle. (Compl. at 4.) Based on his allegations that he did not commit any traffic violations when Voros pulled him over, Chandler appears to assert Voros initiated an unlawful traffic stop. (*Id*. at 2.) He further claims Voros used excessive force during the traffic stop and searched and seized his vehicle without a warrant or probable cause by towing it, presumably to Marshall Road Towing. (*Id*. at 3-4.)

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const.

amend. IV.  "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause."  *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)).  It is well-settled that the temporary detention of an individual during a traffic stop is a "seizure" of "persons" under the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996). However, traffic stops may be initiated based on a reasonable suspicion that a traffic violation has occurred.  *See United States v. Green*, 897 F.3d 173, 178 (3d Cir. 2018) (citing *Navarette v. California*, 572 U.S. 393 (2014); *see also United States v. Delfin-Colina*, 464 F.3d 392, 396-97 (3d Cir. 2006) (adopting reasonable suspicion, not probable cause, as the applicable standard). Moreover, where police have directly witnessed a traffic violation, a traffic stop is a reasonable seizure under the Fourth Amendment.  *See United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) ("[A] traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations.");  *see also, e.g.*, *Kansas v. Glover*, 589 U.S. 376, 385-86 (2020) (traffic stop was lawful where "[u]nder the totality of the circumstances of this case, Deputy Mehrer drew an entirely reasonable inference that Glover was driving while his license was revoked").  Further, an officer's subjective reason for making a traffic stop plays no role in the reasonable suspicion analysis.  *See Whren*, 517 U.S. at 812-13; *see also United States v. Wilson*, 960 F.3d 136, 145 (3d Cir. 2020) (a technical violation of a traffic code legitimizes a stop, and pretext is "irrelevant" to the analysis), *cert. denied sub nom. Moore v. United States*, 141 S. Ct. 1090 (2021).

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission — to address the

traffic violation that warranted the stop, and attend to related safety concerns." *Id.* (internal citations omitted).  "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355; *see also* 75 Pa. Cons. Stat. § 6308(b).  "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*, 575 U.S. at 355.  The length of any additional investigation and detention after a traffic stop must be supported by reasonable suspicion based on the facts and circumstances confronting the officer.  *United States v. Hurtt*, 31 F.4th 152, 159 (3d Cir. 2022).  Where they have a reasonable suspicion, officers may frisk, handcuff, and detain a suspect while conducting their investigation.  *See, e.g., United States v. Hackett*, 173 F. App'x 164, 165 (3d Cir. 2006) (citing *Moorefield*, 111 F.3d at 13-14) ("Police are justified in ordering a driver out of the car "for their own protection during the brief detention required for that investigation.").

Chandler asserts Voros "stated the stop was for an allegedly invalid registration plate and illegal tint." (Compl. at 2.)  As noted above, a violation of traffic laws observed by an officer, such as invalid registration or license plate, is a permissible reason for a traffic stop.  *See United States v. Yusuf*, 993 F.3d 167, 171 (3d Cir. 2021) (holding that a traffic stop on the basis of a partially obstructed license plate was conducted within the bounds of the Fourth Amendment); *see also Commonwealth v. Jackson*, 273 A.3d 1033, No. 294 MDA 2021, 2022 WL 368337, at *8 (Pa. Super. Ct. 2022) (unpublished table disposition) (upon learning that the driver he pulled over for tinted windows, a traffic code violation, lacked a valid license, "Trooper Fleisher had the additional reasonable suspicion that he needed to extend the traffic stop while he investigated whether Appellant or someone else was capable of driving the vehicle").  Although Chandler

9

believes he did not commit a traffic violation, he does not allege that Voros lacked a basis for perceiving a traffic violation at the time of the stop.  In fact, Chandler concedes that he did not have valid registration when he was stopped as he told Voros "that the decorative auto tag was not a state issued registration plate nor does it resemble or impersonate one."  (Compl. at 2.) Chandler's failure to allege that Voros lacked reasonable suspicion to believe a violation had occurred, coupled with the fact that he was charged with driving an unregistered vehicle with improper sunscreening, without proper insurance, and while his operating privileges are suspended or revoked, renders any Fourth Amendment claim based on the initial stop not plausible.  *See generally Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (explaining the Court is not required "to accept as true unsupported conclusions and unwarranted inferences.").

Turning to the search and seizure of the vehicle, Pennsylvania law provides that when a law enforcement officer verifies that a person is operating a motor vehicle that does not have a valid registration or its registration has been suspended, "the law enforcement officer shall immobilize the motor vehicle or combination or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent . . . ."  75 Pa. Cons. Stat. Ann. § 6309.2(a)(2).  If Voros had reason to believe that Chandler was operating a vehicle with an invalid and/or expired registration, it was permissible for the car to be towed pursuant to Pennsylvania law.[3]  *See Perry v. Faddis,* No. 22-4012, 2023 WL 144432, at *5 n.11 (E.D. Pa.

---

[3] Chandler also mentions the loss of his property and complains about the $285 fee Marshall Road Towing charged to get his vehicle back.  (Compl. at 3.)  Notably, the law also provides for a means by which the owner or a lienholder of any vehicle can retrieve the vehicle.

Jan. 10, 2023) (citing *Sheller v. City of Philadelphia*, No. 11-2371, 2012 WL 4754820, at *6-7 (E.D. Pa. Oct. 5, 2012) (explaining that the language of the statute "provides law enforcement officers with the option to tow based on their determination of the interest of public safety")). Based on his own allegations that the vehicle had a "decorative auto tag," which "was not a state issued registration plate" (Compl. at 2), and the public records confirming he received traffic citations for driving an unregistered vehicle, operating a motor vehicle without proper insurance, and driving while his operating privileges are suspended or revoked, any claim that Voros violated Chandler's rights by seizing and towing the vehicle is not plausible.

Any constitutional violation based on the search of the vehicle is also not plausible because it was permissible for Voros to search the vehicle in these circumstances. An inventory search of a vehicle is an exception to the warrant requirement of the Fourth Amendment. *See, e.g., Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987) (explaining that "inventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."); *United States v. Carey*, 72 F.4th 521, 531 (3d Cir. 2023) ("Detectives of the Harrisburg Police testified that it was standard procedure to perform an inventory search of any vehicle that was to be towed or impounded following an accident or arrest. Such a procedure complies with the Fourth

---

75 Pa. Cons. Stat. § 6309.2(d). To the extent Chandler also intended to raise a procedural due process claim based on the seizure and towing of his vehicle, he does not explain why these post-deprivation procedures are insufficient to provide any process due. *See Mancini v. Northampton County*, 836 F.3d 308, 315 (3d Cir. 2016) ("Fundamentally, procedural due process requires notice and an opportunity to be heard" in a meaningful time and manner (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976))); *Mawson v. Pittston City Police Dept.*, No. 16-400, 2017 WL 4324840, at *15 (M.D. Pa. Jan. 20, 2017), *report and recommendation adopted*, 2017 WL 4366446 (M.D. Pa. Sept. 28, 2017) (concluding, in the towing context, that "[c]ourts have recognized that a state-law conversion or replevin case provides an adequate post-deprivation remedy in situations of seized property").

Amendment." (internal citations omitted)), *cert. denied*, 144 S. Ct. 2617 (2024); *United States v. Mundy*, 621 F.3d 283, 294 (3d Cir. 2010) (finding that inventory search of vehicle conducted pursuant to police department procedure before it was towed was permissible under Fourth Amendment after driver committed traffic violations, including invalid registration).

Chandler further alleges a claim against Marshall Road Towing, asserting it was acting under color of law to seize his vehicle.  While a towing company may be liable as a state actor, *see Rosado v. City of Coatesville*, No. 19-2426, 2020 WL 1508351, at *5 (E.D. Pa. Mar. 30, 2020) (permitting § 1983 claim to proceed against towing company based on allegations that company acted with township officials to unlawfully seize property vehicle), because the underlying seizure of the vehicle was lawful, Marshall Road Towing cannot be held liable under these circumstances.  Accordingly, any Fourth Amendment claims based on the initial traffic stop and search and seizure of vehicle will be dismissed.

### 2.    Claims Related to Excessive Force

A constitutional claim of excessive force that occurs during a traffic stop is governed by the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]"); *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test.").  "Courts determine whether the force used is 'objectively reasonable' based on the totality of the circumstances, . . .  and certain factors, including: 'the facts and circumstances of each particular case, . . . the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (quoting *Graham*, 490 U.S. at 386)).  Further, the reasonableness of force is considered from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Johnson v. City of Philadelphia*, 837 F.3d 343, 350 (3d Cir. 2016) (quotations and citation omitted).

After Chandler refused Voros's command to exit the vehicle, he asserts Voros "escalated the encounter," and "became physically aggressive," threatening to arrest him, and take custody of his son.  (Compl. at 2-3.)  At some point during the stop, he claims Voros opened one of the vehicle's doors without consent and "placed his hand on his firearm while [Chandler] reached for his passport."  (*Id*. at 3.)  These allegations fail to allege a plausible claim that Voros used excessive force, or *any* physical force at all for that matter, or acted unreasonably given the circumstances.  Chandler does not allege Voros took the gun out of the holster or pointed it at him, but only that Voros placed his hand on the gun when Chandler made reaching movements inside the vehicle.  Nothing that Chandler alleges about the incident makes plausible a claim that it was unreasonable for an officer in Voros's situation to be on alert of a potential threat particularly where Chandler also admits Voros acted after he refused to comply with the lawful command to exit the vehicle.  The United States Supreme Court has explained that making an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham*, 490 U.S. at 396.  Chandler does not allege Voros physically touched him, injured him, or pointed a weapon at him, and the alleged force used against him amount to threats alone and is far less significant than other cases dismissing excessive force claims.  *See, e.g., Bressi v. Brennen*, 823 F. App'x 116, 118-19 (3d Cir. 2020) (*per curiam*) (affirming dismissal of excessive force claim where plaintiff alleged he was grabbed by the neck

13

and slammed against a concrete wall "for no reason whatsoever" while being transported to a prison); *Pearson v. Krasley*, 715 F. App'x 112, 114 (3d Cir. 2017) (*per curiam*) (holding no plausible excessive force claim when officer pointed gun at the plaintiff and requiring him to lie on the ground during arrest for promoting prostitution); *Stiegel v. Peters Township,* 600 F. App'x 60, 67 (3d Cir. 2014*)* (finding that an officer drawing his handgun on suspects was reasonable in part because the officer's "use of his service and weapon was limited— he displayed it for a short amount of time and holstered it once the situation was under control."); *Hughes v. Shestakov*, 76 F. App'x 450, 452 (3d Cir. 2003) (holding no excessive force where officer took arrestee to back of police van, bumped his head on van's roof, jerked his shoulders, and gave him a "rough ride" to the police station).

### D.    Fourteenth Amendment Claims

Chandler alleges Voros's threats to take custody of his son violated his substantive due process right to family integrity.  (Compl. at 4.)  The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  A plaintiff may assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.  *Zinermon v. Burch,* 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 328 (1986)).  To be plausible, this type of due process claim must allege governmental conduct that "'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'"  *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)).  The  Supreme Court explained that "the core of the concept" of due process is "protection against arbitrary action," *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998), and that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense," *id*. at 846 (quotation

14

omitted).  Accordingly, in a substantive due process challenge to an action taken by a government official, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id*. at 847 n.8; *see also United Artists Theatre Circuit, Inc. v. Township. of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003) ("[O]ur cases have repeatedly acknowledged that executive action violates substantive due process only when it shocks the conscience.").  Chandler's allegations regarding Voros's conduct, accepted as true, fail to rise to the level of conscious-shocking behavior.  That Voros reacted and threatened to take custody of his son after Chandler refused to be compliant with Voros's lawful orders to exit the vehicle (*see* Compl. at 2-3), was not arbitrary conduct.  Because nothing about Voros's behavior rises to the level of arbitrary, conscious-shocking behavior, particularly where Chandler does not allege he suffered any physical injury, he has failed to allege a plausible substantive due process claim.  Therefore, the Fourteenth Amendment claims will be dismissed.

### E.  Municipal Liability Claims

Chandler also names Upper Darby as a defendant.  As an initial matter, a municipality is not vicariously liable under § 1983 for the actions of its employees.  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that local governments can be liable as "persons" under § 1983, but this liability extends only to "their *own* illegal acts" (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986))).  Rather, to plead a § 1983 claim against a municipality or municipal entity, a plaintiff must allege that the municipality or municipal entity's policy or custom caused the violation of his constitutional rights.  See *Monell,* 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v.*

15

*City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* But "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (stating that if a municipal employee "inflicted no constitutional injury . . . , it is inconceivable that [the municipality] could be liable")). Chandler's allegations that simply paraphrase the standard for municipal liability (*see* Compl. at 5), cannot support a plausible claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases). Also, because Chandler has failed to plead any plausible underlying constitutional violation, it is inconceivable that the claim against Upper Darby is plausible and will be dismissed with prejudice.

### F.    State Law Claims

Any state law claims will also be dismissed.  In the absence of any federal claims,[4] the only independent basis for jurisdiction over state law claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "complete diversity between all plaintiffs and all defendants," which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co.,* 800 F.3d at 104 (first quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); then quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).  An individual is a citizen of the state where they are domiciled, meaning the state where they are physically present and intend to remain.  *See Washington v. Hovensa, LLC*, 652 F.3d 340, 344 (3d Cir. 2011).

Chandler asserts he is a citizen of Pennsylvania.  (*See* Compl. at 1.)  Although he does not allege the state citizenship for any of the Defendants, his own citizenship cannot be diverse from Upper Darby Township.  Accordingly, diversity jurisdiction is lacking over Chandler's state law claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Chandler leave to proceed *in forma pauperis* and dismiss his Complaint.  No leave to amend will be given as amendment would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).  An

---

[4] Because the Court has dismissed Chandler's federal claims, the Court will not exercise supplemental jurisdiction over any state law claims.

appropriate Order dismissing this case will be entered separately.  *See* Federal Rule of Civil

Procedure 58(a).

**BY THE COURT:**

_____
**MARY KAY COSTELLO, J.**
